O. K. EXPRESS CORP., Respondent, *v.* MARYLAND CASUALTY COMPANY, Appellant.

First Department, March 29, 1960.

*William F. McNulty* of counsel (*Bush & O'Brien,* attorneys), for appellant.

*Benjamin Shedler* of counsel (*Allen H. Weiss* with him on the brief; *Gelfand & Shedler,* attorneys), for respondent.

*Per Curiam.* The dispute herein centers upon a policy issued by the defendant to the plaintiff covering, among other things, loss of money outside the plaintiff's premises. The plaintiff claims that the loss it sustained is within the coverage of the policy; the defendant takes the contrary view.

The proof consists of the policy, marked in evidence, and the testimony of Mr. Salmonsohn, the plaintiff's secretary and general manager, and in charge of its office. On Friday evening, August 16, 1957, according to Salmonsohn's testimony, there was an excessive amount of cash on the plaintiff's premises, and he therefore took $600 of company funds with him for safe-keeping. He placed the money in his wallet, which also contained some of his personal funds, and then put the wallet into his trouser pocket. He also kept some of his own money in a clip carried in another pocket. Later that evening, he attended the automobile races with his family. At 10 o'clock on the morning of the following day, Saturday, he drove to a beach club, stayed throughout the day, went home to change clothes, returned to the beach club for dancing, and then left there for a restaurant where he remained until 2:00 A.M. Sunday. Thereafter he arrived at his home where he removed his trousers, hung them over a chair, and went to bed. He discovered the loss at 11 o'clock Sunday morning, and reported the matter to the police and to his insurance broker. All that day at the beach club the wallet was in his locker, the key to which was retained by an attendant. According to Salmonsohn, it is clear that from Friday night to Sunday morning he saw the wallet on only one occasion. That was when he discovered that the cash in his money clip was insufficient to pay the check for drinks ordered while he was waiting to be seated at a table in the restaurant. It was then, for the first, last, and only time, that he looked into the wallet and extracted some money for the purpose indicated. That money, he said, was part of his personal funds. He did not examine the wallet to see if the company funds were still intact. Salmonsohn stated that he " assumed " that he replaced the wallet.

The sole issue, therefore, is whether the following provisions in the policy under consideration cover the loss in question:

" Coverage B — Loss outside the Premises.

" To pay for loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof outside the premises while being conveyed by a messenger.

\* \* \*

" 1. Definitions.

\* \* \*

" (d) Messenger. The word ' messenger ' means the insured, a partner therein or an officer thereof, or any employee thereof who is in the regular service of and duly authorized by the insured to have the care and custody of the insured property outside the premises."

The defendant argues that the $600 did not disappear " while being conveyed by a messenger " within the meaning of the policy. While, under the terms of the policy, a messenger need not necessarily be an officer of a company, an officer may serve as a messenger. But that is not the end of the problem, for loss occurring outside the premises is covered while money is " being conveyed by a messenger." We must ascribe to the term " conveyed " a meaning compatible with the purpose of the policy and within its scope. There is not a scintilla of evidence to indicate that the money was being conveyed to a bank or other depository, or to some other person at another place. We must assume that the money was to be returned to the same place from which it had been removed, namely, the office of the company, and the record is clear that Salmonsohn was carrying the money solely for the purpose of safekeeping.

It has been held that to carry or to convey is synonymous with to transport. In the absence of proof that Salmonsohn was taking the money from the plaintiff's office to some other specific place, it cannot be said that the loss occurred " while being conveyed by a messenger." (See *Freiberger* v. *United States Fid. & Guar. Co.*, 143 Misc. 164; *Trad Tel. Corp.* v. *Hartford Acc. & Ind. Co.*, 35 N. J. Super. 36 cert. denied 19 N. J. 330.)

Nothing in the testimony negatives the possibility that the loss occurred after Salmonsohn had removed his trousers and gone to bed. (See *J. & C. Drug Co.* v. *Maryland Cas. Co.*, 298 S. W. 2d 516 [Mo. App.].)

Under the circumstances we must hold that Salmonsohn was not acting as a messenger but merely as a custodian of the funds. It follows that the loss did not occur while money was being conveyed by a messenger as specified and intended under the coverage of the policy.

The determination of the Appellate Term directing judgment for the plaintiff should be reversed on the law and on the facts, and the judgment for the defendant entered in the Municipal Court should be reinstated, with costs in all courts to the defendant.

BREITEL, J. P., RABIN, M. M. FRANK, McNALLY and BERGAN, JJ., concur.

Determination unanimously reversed, and the judgment for defendant entered in the Municipal Court reinstated, with costs in all courts to the defendant-appellant.