243 So.2d 228 (1971)
STATE LIQUOR STORES #1, State Liquor Stores #2, Variety Package Store, Inc., Appellants,
v.
UNITED STATES FIRE INSURANCE CO., Appellee.
No. N-485.
District Court of Appeal of Florida, First District.
January 26, 1971.
*229 Fisher, Hepner & Hertz, Pensacola, for appellants.
Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellee.
WIGGINTON, Acting Chief Judge.
Plaintiffs in these consolidated cases appeal and seek reversal of a final judgment in favor of defendant based upon a verdict directed by the court at the conclusion of plaintiffs' evidence.
This suit was instituted by plaintiffs on a mercantile robbery insurance policy issued to each of them by defendant. Plaintiffs seek judgment for the amount of company funds stolen from their president under the circumstances of this case. The pleadings of the parties raise two basic issues for determination. The first issue involves the question of whether at the time of the robbery the money stolen was in the process of being "conveyed by a messenger" within the coverage provided by the terms of the policies. If this question is resolved in the negative, then the second issue presented is whether appellee insurance company agreed to provide coverage for money lost by robbery outside the insured premises when not in the process of being "conveyed by a messenger" at the time the robbery occurs.
The facts of the case are not in dispute. Appellants purchased the burglary insurance policies involved in this case through a local agency, Waldorff's Insurance and Bonding, Inc., which agency was the general agent for the appellee, United States Fire Insurance Co. At the time the insurance was discussed the president of the agency was fully apprised of the procedure followed by appellants in the handling of their money received in the course of their respective businesses. The agency was informed that each night at the close of business all money on hand in each business was accumulated by the company's president, Clary, and taken to the latter's home where he maintained an office. The company funds were kept in his personal possession until the following business day when bank deposit slips were made out and the money taken to the bank for deposit. After being informed of such practice by appellants, appellee's agent advised that the burglary insurance policy then being offered to appellants would fully protect them from loss by robbery. It was on the basis of this understanding that the insurance policies were issued by appellee and delivered to appellants.
At the close of business on Saturday night, July 27, 1969, appellants' president picked up the company funds accumulated during the day at all three places of business and took them to his home where he placed the money on a desk next to his bed. On the following morning a robber entered the president's home and robbed him of the company's funds. Had the robbery not occurred, a portion of the money in the *230 possession of appellants' president would have been returned to each of the three stores on Sunday morning for use as petty cash when the stores opened that day for business. In this event, Sunday's receipts from sales would in a like manner have been taken by the president to his home after the close of business and added to the money derived from Saturday's business, which together would have been made the subject of a deposit in the bank when that institution opened on the following Monday morning.
We first consider the question of whether under the facts hereinabove recounted it should be held as a matter of law that at the time of the robbery the money was in the process of being "conveyed by a messenger" within the coverage provisions of the policies. Coverage A of each of the insurance policies provides that the company will pay for loss of money, securities and other property by robbery or attempt thereat within the insured premises. Coverage B of the policies provides:
"Robbery Outside the Premises. To pay for loss of money, securities and other property by robbery or attempt thereat outside the premises while being conveyed by a messenger."
Under the definition clause of the special provision section of the policies it is provided:
"`Messenger' means the insured, a partner therein or an officer thereof, or any employee thereof who is in the regular service of and duly authorized by the insured to have the care and custody of the insured property outside the premises."
The law relating to the construction of insurance policies is well established in this state. If the language of the policy is plain and unambiguous, the words must be given their commonly accepted meaning. When the meaning of the policy provision is clear and free from doubt, it will be enforced as written and resort will not be made to extrinsic evidence for the purpose of arriving at a proper construction of the language used.
It is appellants' position that when the company's money involved in this proceeding was stolen, it was in the process of being conveyed by their president to the bank because he fully intended to deposit the money in the bank when it opened for business on the following Monday morning.
On the contrary, appellee contends that at the time the company's funds were stolen they were not being "conveyed by a messenger" within the clear and unambiguous provisions of the policies and, therefore, off-the-premises coverage is not available for payment of the loss.
No decision by an appellate court in this state has been cited by either party, in which the policy provision with which we are here concerned has been construed. The identical language of these policies has been construed, however, by courts of other jurisdictions. Those courts have uniformly held that a loss by robbery under circumstances similar, if not identical, with those present in the case sub judice does not come within the coverage of the policy.
In J & C Drug Company v. Maryland Casualty Company[1] three retail drug companies, each a separate corporate entity, held insurance policies which provided coverge for company money lost by robbery off the insured premises "while being conveyed by a messenger." All three companies were owned and controlled by the same persons and managed by one Pessin who was an officer in each corporation. In accordance with his customary practice, Pessin accumulated all of the money realized from sales by each of the three companies at the end of the business day on Saturday, and took such money to his home where he kept it until the following Monday morning. Upon leaving his home *231 on Monday morning Pessin took the money to a fourth drug store owned by him and his associates and, upon arriving there prior to banking hours, placed all of the money in his safe located in the office at the rear of the store. It was his intention to take the money to the bank and deposit it as soon as the bank opened for business that day. Before being able to accomplish his intended purpose, Pessin was robbed by a bandit who forced him to open the safe from which the money owned by the three corporate insureds was stolen. The insurance company disclaimed liability on the ground that at the time of the robbery the money was not being "conveyed" within the restrictive provisions of the insurance policy sued upon.
In rejecting the claim by the drug companies against their insurance carrier, the court framed the question for determination as follows:
"The sole question to be resolved has to do with the meaning of the clause in the policies which insured against the loss of money `occurring outside the premises * * * while being conveyed by a messenger'. The money was outside the premises of the insured plaintiffs and on this score there is no dispute. There is no question raised about Pessin qualifying as a messenger under the terms of the policies. The defendant does contend that Pessin was neither acting as a messenger nor `conveying' the money at the time of the holdup. The plaintiffs conversely maintain that since the money had left its point of origin and had not yet reached the bank, it was still being `conveyed' even though it was in the safe of the Sands Drug Company at the time the robbery took place."
In reaching its determination that the stolen money was not being "conveyed by a messenger" at the time of the robbery as required by the policy provisions, the court said:
"In the case under consideration Pessin had conveyed the money to the Sands Drug store where he placed it in a safe. He had then turned his attention and activities to the business of running the store. It was during this time that the holdup occurred and the fact that Pessin had intended to take the money to the bank later did not make him a messenger at the time of the robbery, nor was the money being conveyed."
In Monteleone v. American Employers' Insurance Company[2] the plaintiff owner of a supermarket held a broad form theft insurance policy which covered loss of money and securities by wrongful abstraction thereof outside the premises "while being conveyed by a messenger." At the close of business on the day prior to the robbery, the insured placed all money derived from that day's sales in two separate money bags and took them to his home where he placed them in a cedar chest. The next morning he removed from the chest one of the bags of money, made out a deposit slip covering the amount contained in that bag and took it to his store, leaving the other bag in the cedar chest at his home. After the bank opened for business, the insured made a deposit of the money contained in the bag which he had brought from his home and then returned to his store where he continued to engage in the normal course of business. Later in the morning he was informed that his home had been burglarized. Upon returning to his home he found that the bag containing money of the previous day's business had been stolen from the cedar chest where he had left it. His claim for the amount of his loss was rejected by the insurance carrier on the ground that at the time of the robbery the money was not being "conveyed by a messenger" within the controlling provisions of the policy.
*232 In his suit against his insurance carrier plaintiff contended that the language "while being conveyed by a messenger" was ambiguous because it suggests the idea of passing from one place to another place while the insurance contract is silent on whether the act of conveying must be fast or slow, direct or indirect, without any temporary interruption or with any temporary interruption, or with or without periodic rests. In its consideration of the pertinent language of the policy, the court adopted Webster's New International Dictionary definition of the word "convey" as follows:
"`Convey * * * To accompany; esp. to convoy, conduct, guide or lead. Obs. 2. To bear from one place to another; to carry, transport * * * 4. To cause to pass from one place or person to another; to serve as a medium or conduit in carrying (anything) from one place or person to another; to transmit; to transfer, * * *'"
In commenting upon the foregoing definition and in concluding that the language of the policy was not ambiguous, the court said:
"The above-cited definitions of the word `convey' all suggest not only `the idea of passing from one place to another place' but also the idea that the thing which is `passing from one place to another place' is being accompanied to its destination. It does not seem to be necessary to an understanding of the word `convey' that there be any indication as to whether the conveying is fast or slow, direct or indirect, or with or without temporary interruptions or periodic rests, for the word standing alone is completely understandable and not a bit vague. In any event, the addition of the words `by a messenger' after the word `conveyed' clarifies, without a doubt, the meaning of the clause which plaintiff claims is ambiguous.
"The word `messenger' is defined by Webster as meaning `one who bears a message or does an errand'. Therefore, the addition of the phrase `by a messenger' to the word `conveyed' denotes conveyance by a person on an errand who keeps the property in his personal custody at all times. * * *"
In concluding that the insured was not entitled to recover the loss sustained by him under the terms of the policy, the court said:
"In the case at bar, the fact that plaintiff had intended to return to his home later in the day and take the $2,160 to the bank cannot be employed to provide coverage under the policy on the theory that the money was still being conveyed by plaintiff, in his capacity as messenger. On the contrary, the insuring clause does not cover intentions but only actualities, that is, while the money is being conveyed by the messenger. * * *"
The conclusions reached in the above-cited cases from Missouri and Louisiana were likewise reached by the First District Appellate Court of Illinois in Blum & Co. v. Standard Acc. Ins. Co.[3] and by the Supreme Court of New York, Appellate Division, in the case of O.K. Express Corp. v. Maryland Casualty Company.[4]
From the facts disclosed by the record in the case sub judice, it is clearly apparent that the mission of appellants' president to convey the company's funds from the places of business to the bank was interrupted and came to a stop when he took the money to his home at the close of business on Saturday where he intended to keep it until he could deposit it in the bank on the following Monday morning. At the time of the robbery the money had *233 rested in the home of appellants' president for a period of some six hours. Had the robbery not occurred, it would have been at least another twenty-four hours before the mission would have been resumed and the money "conveyed" to the bank for deposit. From these facts it is irrefutable that at the time of the robbery the money was not in the process of "being conveyed by a messenger" as required by the terms and provisions of the policy. Since no ambiguity exists in the language used in specifying the conditions of coverage for loss resulting from robbery off the premises, resort need not be made to extrinsic evidence or speculation for the purpose of determining what meaning should be attributed to that language. For these reasons and upon the authorities hereinabove cited, we hold that the loss upon which claim was made in these cases did not occur within the coverage provision of the policies. The construction placed upon the policies by the trial court was correct and is affirmed.
We finally turn to the remaining issue involving the question of whether appellee insurance company agreed to provide coverage for money lost by robbery outside the insured premises when not in the process of being "conveyed by a messenger" at the time the robbery occurs. Appellants tendered proof designed to establish that before the insurance policies were actually issued by appellee, the latter's general agent, Waldorff Insurance and Bonding, Inc., was fully apprised of appellants' method of conducting their business as regards the practice of taking to the home of their president money received in the course of the business during the day and retaining that money at the president's home overnight before depositing it in the bank when it opened on the following business day; that being aware of such practice by appellants, they were informed that the policies which appellee intended to furnish would cover any loss of money being handled by appellants in their customary manner. It is appellants' position that such evidence constitutes a waiver by appellee of the restrictive provisions of their policies, and that the court erred in its pretrial conference ruling that such evidence would be inadmissible at the trial.
It is apparent that appellants base their position upon the doctrine of waiver and estoppel and rely on the knowledge of their operation by appellee's general agent as sufficient grounds to constitute a waiver of the restrictive provisions of the policies.[5]
We do not perceive that we are here concerned with the question of whether the conduct of appellee's agent constitutes a waiver of any of the policy provisions. On the contrary, the real and basic issue is whether the policies sued upon provide insurance coverage not stipulated therein. It must be recognized that there is substantial difference in law between oral representations concerning the scope and extent of coverage to be afforded by an insurance policy yet to be issued, and oral representations waiving forfeiture provisions of a policy after it is issued. In Reisman v. New Hampshire Fire Insurance Company[6] plaintiff boat owner applied to defendant's insurance agent for a policy of marine insurance covering her houseboat from loss due to perils of the sea. The agent wrote a letter to the owner that the bottom of her boat was excessively fouled with barnacles and it should be hauled out of the water, cleaned and painted. Before moving the boat to a dry dock for the purpose of complying with the agent's request, the owner was assured by telegram that the boat was covered by insurance for the trip to the dry dock before the policy issued. While tied up in the boat yard, the boat sank. It was determined that the cause of the sinking was the wormeaten condition of the hull which did not constitute a peril of the sea covered by the insurance policy issued by the defendant *234 company. The owner contended, however, that the company's agent knew that the bottom of her craft was fouled because of which he requested that the boat be placed in dry dock for cleaning and painting, and that because of such knowledge the company assumed the risk of the loss which occurred. In rejecting this contention, the Fifth Circuit Court of Appeals pointed up the difference between oral representations going to the coverage or scope of an insurance policy yet to be issued, and oral representations which constitute a waiver of the forfeiture provisions of an insurance policy. In so doing, the court said:
"* * * It is the law of this Circuit that conditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action. C.E. Carnes & Co. v. Employers' Liability Assur. Corp., 5 Cir., 1939, 101 F.2d 739. To grant the insured coverage because of this conduct would be to extend the coverage of the policy itself, which is prohibited."
The foregoing principle was recognized by the Second District Court of Appeal in Reliance Mutual Life Insurance Co. of Ill. v. Booher[7] in which it said:
"* * * When considering waiver, conditions going to the coverage or scope of a policy are distinguished from those furnishing a ground for forfeiture. * *"
In Bradley v. Western and Southern Life Insurance Co.[8] this court rejected the claim by a widow who had paid a one month's premium at the time she applied for a policy insuring her husband's life. The receipt given to her by the agent of the insurance company for the premium payment recited the understanding and agreement that no agent or other person had the power to make or modify any contract of insurance or bind the insurance company by making any promises or representations, and that no knowledge on the part of the agent would be binding on the company unless reduced to writing and made a part of the application. Despite such provision, the agent assured the widow that her husband was covered by insurance and no further premium payments on the policy would be required until after the husband was examined by a physician. The examination never took place nor did the policy issue before the husband died. This court, in affirming judgment for the insurance company, held that the verbal assurance by the agent to the widow that her husband was covered by insurance and that no further premium payments need be made until after the physical examination was completed related to coverage and therefore was not binding on the company.
The insurance policies in each of the cases sub judice contain the following provision:
"Changes. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by a duly authorized representative of the company."
From the record it clearly appears that any assurances which appellee's general agent, Waldorff, gave to appellants with respect to the insurance policies yet to be issued was a representation going to the scope or extent of coverage. There is no showing in the record that the agent had any authority to contract for insurance coverage protecting appellants from loss by robbery occurring off the insured premises, whether or not the robbery took place while the money was being conveyed by a messenger. The terms of the policies are clear *235 and unambiguous and restrict coverage only to those losses which occur while the money is being conveyed by a messenger. When appellants received and accepted the policies, they agreed to the terms and provisions set forth in them and cannot now be heard to contend that they purchased broader coverage than that set forth in their respective contracts. Appellants are in the same position as if Waldorff had agreed to furnish a robbery insurance policy containing a maximum coverage of $10,000. Since the policies issued and delivered to appellants contain a maximum coverage of only $4,000, appellants would have no standing to contend that the insurance company should be bound by Waldorff's verbal representations as to the extent of coverage which would be afforded by the policies when issued. Under the authorities hereinabove cited appellants were neither authorized to nor justified in relying upon any verbal assurances given them by Waldorff with respect to the scope or extent of coverage to be provided by the policies in question, therefore, their contention that appellee should be estopped from denying the broader coverage contended for must be rejected.
The judgment appealed is accordingly affirmed.
CARROLL, DONALD K., and RAWLS, JJ., concur.
NOTES
[1] J & C Drug Company, Inc. v. Maryland Casualty Company, (Mo. 1957) 298 S.W.2d 516, 518-520.
[2] Monteleone v. American Employers' Insurance Company, (1960) 239 La. 773, 120 So.2d 70, 72-74.
[3] Philip Blum & Co., Inc. v. Standard Acc. Ins. Co., 336 Ill. App. 354, 83 N.E.2d 605.
[4] O.K. Express Corp. v. Maryland Casualty Company, 10 A.D.2d 203, 198 N.Y.S.2d 105.
[5] 43 Am.Jur.2d 867, Insurance, § 912.
[6] Reisman v. New Hampshire Fire Insurance Company, (5th Cir.1963) 312 F.2d 17, 20.
[7] Reliance Mutual Life Insurance Company of Ill. v. Booher, (Fla.App. 1964) 166 So.2d 222, 226.
[8] Bradley v. Western and Southern Life Insurance Company, (Fla.App. 1963) 148 So.2d 559.