277 So.2d 53 (1973)
HYDRAULIC EQUIPMENT SYSTEMS AND FABRICATION, INC., a Florida Corporation, Appellant,
v.
PENNSYLVANIA MILLERS MUTUAL INSURANCE COMPANY, Appellee.
No. 72-764.
District Court of Appeal of Florida, Third District.
April 24, 1973.
Rehearing Denied May 22, 1973.
*54 Smith, Mandler, Smith & Parker, and Joe N. Unger, Miami Beach, for appellant.
Bradford, Williams, McKay, Kimbrell, Hamann & Jennings, and L. Kenneth Barnett, Miami, for appellee.
Before PEARSON, HENDRY and HAVERFIELD, JJ.
PEARSON, Judge.
This is an appeal from a summary final judgment entered in favor of the appellee Pennsylvania Millers Mutual Insurance Company. The plaintiff-appellant, Hydraulic Equipment Systems and Fabrication, Inc., filed its complaint against A & T Machinery Movers, Inc., upon an allegation that A & T had negligently damaged a machine that A & T had contracted to move from its place inside a building to the outside of the building. Pennsylvania was included as a defendant because it was the insurer of A & T. The motion for summary judgment filed by Pennsylvania was granted upon the pleadings, argument of counsel, and the deposition and affidavit of one Joseph V. Adams, the president of A & T. The cause is still pending in the trial court against A & T.
The deposition of Mr. Adams reveals that A & T had been hired by Hydraulic to jack up a 33,000 pound piece of machinery, put it on skids and rollers, and drag it by use of a winch from the inside to the outside of the building in which it was located so that it could thereafter be loaded on a truck. In the process of jacking the machine from the floor in order to place it on rollers, the machine was overturned and damaged. There is no question that the contract between Hydraulic and A & T did not include loading the machine on an A & T truck, but only called for moving it so it could later be loaded on another company's truck.
The affidavit of Mr. Adams asserts that the machine "was damaged while being moved for loading ... and that the insurance policy carried by this Defendant at the time of the said incident contained an endorsement covering the risk of loading and unloading from conveyance". The affidavit further states that when Mr. Adams obtained the insurance policy and endorsement, he inquired of the insurance agent as to whether or not the policy would cover all the risks in the operation of his business, and that he was so advised.
The following excerpt from the deposition of Mr. Adams clearly delineates the circumstances surrounding the issuance of the insurance policy and endorsement:
"Q. Before you moved this machine, sir, did [a representative of the plaintiff] ask you if you had an insurance policy, insurance coverage?
A. Yes, sir.
Q. Did you advise him so?
A. Yes.
Q. Is that one of the requirements that they want before you move a machine?
A. Yes, sir.
Q. When you purchased this policy from Mr.  excuse me  from Mr. Petrine? 
A. Petrine.
Q.  what kind of policy did you have in mind purchasing?
* * * * * *
THE WITNESS: Since I have been in the machinery business all these years, and since I know what it is to move machinery and also to sell it, I specifically stated to him what type of insurance policy I wanted.
Q. (By Mr. Ciravolo) What was that type?

*55 A. I wanted specifically  I instructed him I must have insurance while I am moving the machine in either direction, loading it and unloading it in every respect. It's what I call in the insurance thing  because I have had it in New York in my insurance  I mean, my rigging business up there  a general liability policy.
Q. Is that what you thought you had?
A. That's what he told me I had when he took my money."
The summary final judgment for the insurer is based upon a holding that as a matter of law the insurance policy did not cover the loss alleged. It is this determination which is now the subject of appeal.
The appellant presents two points for reversal. The first urges that the summary judgment should be reversed because as a matter of law the court erred in its construction of the insurance policy. The second point urges that the summary judgment should be reversed because the record reveals a genuine issue of material fact as to whether Pennsylvania was estopped to deny liability because of the representations of its agent. We will consider these points in numerical order.
The insurance policy issued to A & T by Pennsylvania was a "motor truck cargo" type of policy which provided "legal liability coverage for cargo in transit". To this policy was added an endorsement which said that it was understood and agreed that the policy "is extended to cover the risk of: (a) [l]oading onto or unloading from conveyance". Inasmuch as the endorsement was upon a policy containing a particular type of insurance, it should only be construed as an extension of that type of insurance. The endorsement contained the words "it is understood and agreed that this policy subject to its terms and conditions excepted as hereinafter provided, is extended ...". As above mentioned, the policy was issued to protect A & T against damage to trucked cargo as a result of the occurrence of certain perils. The policy states that "[t]his policy covers the legal liability of the Insured as a common or contract carrier under tariff documents, bills of lading or shipping receipts issued by the Insured, for direct loss or damage caused by any of the perils specified herein ...". The perils listed are:
"(a) Fire and lightning, including self-ignition or internal explosion of the vehicle;
(b) Cyclone, tornado and windstorm;
(c) Flood, meaning rising of rivers and waters;
(d) Explosion, excluding explosion in the premises of the Insured originating within steam boilers, pipes, flywheels, engines and machinery connected therewith and operated thereby;
(e) Collision while in the ordinary course of transportation (meaning thereby the violent and accidental contact of the motor vehicle with any other automobile, vehicle or object; but excluding loss or damage by coming in contact with any portion of the roadbed or by striking the rails or ties of street, steam or electric railroad, or by coming in contact with any stationary object in backing for loading or unloading purposes, or the coming together of truck and trailer during coupling or uncoupling or by collision of the insured property with another object unless the transporting vehicle is in collision within the meaning of this policy) but free from all claims for loss, damage or expense by wear and tear or ordinary handling due to the mode of transportation.
(f) Overturning of vehicles on which the shipments insured are being transported; (Overturning as used herein shall mean the upsetting of the vehicle(s) to such an extent that it comes to rest on its side or top.)

*56 (g) Collapse of bridges, docks and culverts;
(h) Stranding, sinking, fire or collision, including General Average or Salvage charges for which the Insured is legally liable on shipments being transported on or in said vehicle(s) while on any regular ferry line."
It is apparent that the damage described did not result from one of the perils listed. It is equally clear that the appellant was not acting as a common or contract carrier nor did it propose to act as a common or contract carrier in connection with the machine which was damaged. It was in fact moving the machine from one place inside a building to another place at the entrance to the building so that it could be transported by a different contract carrier.
In addition, the jacking up of a machine for the purpose of rolling it from one place inside the building to another place outside the building is not in ordinary language included by the words "loading onto or unloading from conveyance". We therefore conclude that the trial court correctly determined that the loss described was not covered under the terms of the policy.
Appellant's second point appears to be an afterthought inasmuch as there is no reference in the complaint to an attempt to hold the insurance company liable because of the representations of its selling agent. The sole allegation concerning the appellee Pennsylvania is contained in paragraph six of the complaint which alleges as follows:
"6] That at the time of the negligence of the Defendant, A & T MACHINERY MOVERS, INC., the Defendant PENN MILLER MUTUAL INSURANCE COMPANY, was the insurer of the Defendant A & T MACHINERY MOVERS, INC., against loss due to negligent moving of equipment."
Nevertheless, as has been mentioned, there does appear in the record in the deposition of the president of A & T the assertion by him that he intended to purchase "a general liability policy". In addition, he stated "That's what he told me I had when he took my money".
The appellant relies upon the decision of this court in Fecht v. Makowski, Fla.App. 1965, 172 So.2d 468. On that appeal, this court reversed a judgment for the insurer upon a holding that a claimed misrepresentation by the insured upon the application for insurance was not material. We simply held that the elements for estoppel were not present. We do not think that the Fecht holding would support a finding here that the insurance company was estopped.
A case more closely related has recently been decided by this court. In Joseph Uram Jewelers, Inc. v. Liberty Mutual Fire Insurance Co., Fla.App. 1972, 273 So.2d 111, we held that in the case of a direct conflict between the coverage afforded and the desired coverage as indicated in an application attached and made a part of the policy, the coverage indicated in the application would be controlling. In making this ruling it was stated:
"We, of course, recognize the general rule that when the provisions of the application and those of the policy irreconcilably conflict, the policy provision will usually govern. 1 Couch on Insurance 2d, § 15:32, p. 703; 13 Appleman, Insurance Law & Practice, § 7583, p. 339. However, that rule is qualified in cases where reliance on the provisions of the application would result in greater indemnity. In such circumstances, the provisions of the application will control. 1 Couch on Insurance 2d, supra at 704; 13 Appleman, Insurance Law and Practice, supra, at 341.
"The courts of this state have generally followed the view of construing ambiguous terms of insurance contracts in favor of greater indemnity for the insured, when doubts cannot be reconciled. *57 See: Daleo v. Bert and Bette Bayfront 66 Marine (Travelers Indemnity Co.), 273 So.2d 113 (Fla.App.3d, opinion filed December 12, 1972) and the cases cited therein."
We do not think that the decision in the Joseph Uram Jewelers case governs the present case because the application is not a part of the policy and the complaint does not allege that the policy was in violation of the application.
We have also examined Kennedy v. Lumbermen's Mutual Casualty Company, Fla.App. 1972, 264 So.2d 32, which held that an exclusionary clause in an insurance policy which precluded the use of the covered automobile as a jitney was inoperative when the application for the policy indicated that the automobile was to be used as a jitney. In that case, it was stated:
* * * * * *
"The clause of the policy which provides that an insured automobile cannot include one while used as a public or livery conveyance, as contained in the printed form dealing at length with `Insuring Agreements' is a reasonable exclusionary provision to be applied to policies issued on vehicles which therein would be stated to be used for purposes other than `as a public or livery conveyance.' But in a policy (with premium paid therefor) issued on a livery conveyance vehicle, with its intended use as such known to the insurer and stated in the application therefor, the exclusionary clause referred to cannot reasonably be construed to have the effect of vitiating the very coverage for which the policy expressly was intended and issued. That exclusionary clause is not operative where the stated purpose of the insurance is to insure a livery conveyance, for use as such."
* * * * * *
We find this holding inapplicable to the case at bar because there is no conflict on the face of this policy and no ambiguity is alleged.
The instant appeal is governed, in our opinion, by the decision in State Liquor Stores #1 v. United States Fire Insurance Co., Fla.App. 1971, 243 So.2d 228. In that case, the court held that words in an insurance policy will be given their commonly accepted meaning, and that when the meaning of the policy is clear, it will be enforced even though the insurer's agent has made representations as to coverage which were not included in the policy. In so holding, the court stated:
* * * * * *
"From the record it clearly appears that any assurances which appellee's general agent, Waldorff, gave to appellants with respect to the insurance policies yet to be issued was a representation going to the scope or extent of coverage. There is no showing in the record that the agent had any authority to contract for insurance coverage protecting appellants from loss by robbery occurring off the insured premises, whether or not the robbery took place while the money was being conveyed by a messenger. The terms of the policies are clear and unambiguous and restrict coverage only to those losses which occur while the money is being conveyed by a messenger."
* * * * * *
Since we have examined the points raised and find that they do not present reversible error, the summary final judgment is affirmed.
Affirmed.